IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANET M. COOK, individually and as the representative of the estate of ROBERT BRUCE COOK, deceased,   )))) | |
| Plaintiffs,   ))  | |
| v.   )  | CIVIL ACTION NO. 02-0808-CG-L |
| ) | |
| ATWOOD OCEANICS, INC., and ATLANTIC MARINE, INC.,   ))) | |
| Defendants. | |

### ORDER

This matter is before the court on the trial briefs filed by both parties (Docs. 100 & 101) which discuss whether maritime or state law should apply to the wrongful death claim asserted against Atlantic Marine in this action. After reviewing the briefs and the relevant case law, the court finds that plaintiff's negligence claim against Atlantic Marine falls within admiralty jurisdiction. The court further finds that federal maritime interests outweigh Alabama's interests in having the state's wrongful death statute apply to this case. Therefore, substantive admiralty law applies to plaintiff's negligence claim against Atlantic Marine.

### BACKGROUND

Decedent, Robert Bruce Cook, worked as a ballast control operator aboard the ATWOOD HUNTER at the Atlantic Marine Shipyard in Mobile Bay, Alabama. The ATWOOD HUNTER was located at the Atlantic Marine shipyard at the time of the incident giving rise to this lawsuit. (Agreed Facts). The ATWOOD HUNTER was owned by Atwood Oceanics and had been undergoing a

1

complete overhaul and refurbishment by Atlantic Marine Shipyard and/or subcontractors doing work for Atlantic Marine Shipyard for a number of months prior to this incident. (Agreed Facts). While in the shipyard, Atlantic Marine provided certain services for the vessel pursuant to a "bridging document." The bridging plan included an emergency response plan to address emergency medical needs for personnel in the shipyard either via Atlantic Marine or local EMS services support. (Gillenwater Depo p. 46, 66).

On November 2, 2001, Mr. Cook collapsed while onboard the vessel from an apparent heart attack. According to the complaint, Mr. Cook had worked long hours the previous day, making the vessel ready for her voyage the next day to Egypt. The Atwood EMT and the Atlantic Marine paramedic defibrillated Mr. Cook and regained a pulse on a couple of occasions while still on the rig, but are alleged to have forgotten the necessary cardiac medications at the ground-based Atlantic Marine Clinic. Atlantic Marine called for emergency medical transport from Newman's Ambulance Service. Plaintiff alleges that because defendants failed to timely provide cardiac medications and cardiac advanced life support on the rig, Mr. Cook's heart rate, pulse, and cardiac rhythm were unable to be sustained. According to plaintiff, the extreme delay on the rig and further delay in transport to the hospital, made his survival untenable. Mr. Cook was pronounced dead later that day at Mobile Infirmary.

## DISCUSSION

Plaintiff asserts claims of Jones Act negligence and unseaworthiness against Atwood, and asserts a claim for negligence against Atlantic Marine. It is undisputed that maritime law applies to plaintiff's Jones Act and unseaworthiness claims. However, plaintiff asserts that Alabama law applies

to her negligence claim against Atlantic Marine.   The complaint alleges:

> A proximate cause of the death of Mr. Cook was the negligence of Defendant, ATLANTIC MARINE, INC., in the following non-exclusive particulars:
>
> > (a) By negligently dispensing a medical emergency response crew to the scene of an emergency cardiac without proper cardiac medication, equipment, and other life-sustaining tools and supplies so that the Plaintiff could have been given a reasonable chance of survival.
> >
> > (b) Other acts or omissions which will be proven at the trial of this matter.

(Second Amended Complaint pp. 4-5).

If the claim comes under admiralty jurisdiction, then substantive admiralty law applies. East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 2298-2299, 90 L.Ed.2d 865 (1986).  "To give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity." Hufnagel v. Omega Service Industries, Inc., 182 F.3d 340, 351 (5th Cir. 1999) (citations omitted) (emphasis in original).  "The situs requirement or "location test" requires the plaintiff to show that the tort either occurred on navigable waters, or if the injury is suffered on land, that it was caused by a vessel on navigable waters." Id. (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)).  The connection test requires that the activity which caused the plaintiff's injury bear a significant relationship to traditional maritime commerce. Id. (citing Grubart supra).  Plaintiff alleges that the claim against Atlantic Marine does not satisfy either prong.

**A) The situs, or location, test**

Did the tort occur on navigable waters?

In Parker v. Gulf City Fisheries, Inc., 803 F.2d 828 (5th Cir.1986), a ship captain aboard a

vessel had telephoned his wife on shore, who noticed that he stuttered and appeared confused and forgetful. His wife spoke twice with a landside private physician about her husband's symptoms and related the doctor's medical advice to her husband onboard the ship. Id. at 828-29. Parker was later treated by the physician on land. Id. at 829. After examining and testing Parker, the doctor sent him to the hospital for blood tests and then home. Id. That afternoon, Parker suffered a massive stroke. Id. The Fifth Circuit found that under the "unique" facts of Parker, i.e., the dispensing of the doctor's medical advice via the plaintiff's wife's communications to the plaintiff while he was on board a vessel on navigable waters, the locality test was satisfied. The doctor contested maritime locality, contending that he engages in a strictly land-based practice and that he rendered his advice to Parker through Parker's wife and his treatment to Parker solely on land. However, the Court found that "admiralty jurisdiction exists at least for the part of the negligence whose impact occurred at sea." Id. The Court explained that "[w]e have long held that 'so long as the place of the injury ... occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.'" Id. at 829-830 (quoting Sperry Rand Corp. v. Radio Corp. of America, 618 F.2d 319, 321 (5th Cir.1980)).

Plaintiff maintains that a more analogous case is Miller v. Griffin-Alexander Drilling Co., 873 F.2d 809 (5th Cir. 1989). In Miller, a "mud man" sustained injuries when he fell from a ladder on a drilling barge. In the several days that followed the fall, Miller was examined and treated by physicians on shore. Id. at 810. Later, a physician performed a series of operations on Miller and eventually amputated part of Miller's left leg. Id. The Miller Court found no admiralty jurisdiction for plaintiff's claims against the physicians. The Miller Court distinguished its facts from Parker, stating that in Parker "[t]he medical advice was dispensed to him in an admiralty situs; and he had no opportunity to seek

4

treatment on land, continuing to work on shipboard after the doctor had provided the advice." Id. at 811.

In the instant case, the medical treatment, or lack thereof, occurred on the ATWOOD HUNTER which was located at the Atlantic Marine shipyard and had been undergoing a complete overhaul and refurbishment. "[S]ome case law suggests that a vessel under construction may not be subject to admiralty jurisdiction." Bunge Corp. v. Freeport Marine Repair, Inc., 240 F.3d 919, 924 (11th Cir. 2001). However, the ATWOOD HUNTER was not under construction, but was being repaired. More importantly, "[s]uch cases [ ] have little effect on the present case because they involve jurisdiction based in [the construction] contract, whereas this case involves jurisdiction based in tort." Id. at 925. "[F]or purposes of the jurisdictional test, the tort occurred where the plaintiffs were exposed to the [danger] that caused their injuries." Harville v. Johns-Manville Products Corp., 731 F.2d 775, 782 (11th Cir. 1984). In this case, Mr. Cook's receipt of medical treatment (or lack thereof) is the alleged incident that resulted in Mr. Cook's death. Thus, the court finds that the tort occurred aboard the ATWOOD HUNTER.

The question remains, however, was the ATWOOD HUNTER, at that time, a maritime situs? There is no doubt that the ATWOOD HUNTER is a "vessel." "Vessel," according to 1 U.S.C. § 3, "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." However, as stated previously, the situs requirement requires that the tort either occurred on navigable waters or was caused by a vessel on navigable waters. While it is not emphatically stated in the parties' briefs or factual statements, it would appear that the

ATWOOD HUNTER was in drydock.[1]  The Eleventh Circuit has held that torts that occur on floating drydocks satisfy the locality test. Sea Vessel, Inc. v. Reyes, 23 F.3d 345 (11th Cir. 1994). The Reyes Court reasoned as follows:

> As we navigate through this jurisdictional fog, we must first determine whether the SEA LION V was on navigable waters at the time of the fire. In its complaint, Sea Vessel simply alleges that the SEA LION V was in dry dock at the time of the fire. (R.1-1 at 1). Reyes takes that bare allegation, that the SEA LION V was in dry dock, and reads it to conclude "that the fire on the Sea Lion V did not occur on navigable waters." (R.1-16 at 3). Reyes's conclusion begs the question. And, we address that very question: Whether a vessel in dry dock on a navigable waterway is in or on navigable waters for purposes of admiralty jurisdiction.
>
>   The Supreme Court has said that a vessel in dry dock is on water, not on land, for purposes of admiralty jurisdiction. In The Robert W. Parsons, the Supreme Court stated:
>
>> All injuries suffered by the hulls of vessels below the water line, by collision or stranding, must necessarily be repaired in a dry dock, to prevent the inflow of water, but it has never been supposed, and it is believed the proposition is now for the first time made, that such repairs were made on land. Had the vessel been hauled up by ways upon the land and there repaired, a different question might have been presented, as to which we express no opinion; but, as all serious repairs upon the hulls of vessels are made in dry dock, the proposition that such repairs are made on land would practically deprive the admiralty courts of their

---

[1] In the agreed facts of their proposed pretrial document (Doc.97), the parties merely state that the vessel is located "at Atlantic Marine Shipyard." In her brief (Doc. 101), plaintiff appears to argue that torts occurring in drydocks are not within maritime jurisdiction and plaintiff's brief includes the following cites:
> Victory Carriers[Inc. v. Law], 404 U.S. [202] at 206-207 [(1971)]. (Holding "accidents on land were not within the maritime jurisdiction as historically construed by this Court. Piers and docks were consistently deemed extensions of land; injuries inflicted to or on them were held not compensable under the maritime law")) (Overruled on other grounds). (See also Parker v. South Louisiana Contractors, Inc., 537 F.2d 113, (5th Cir. 1976) (Holding that negligence occurring on land or land-based structures such as piers and docks do not meet the locality test for Admiralty jurisdiction).

There being nothing to contradict plaintiff's implication that the vessel was in drydock, the court presumes that to be the case.

> largest and most important jurisdiction in connection with repairs. No authorities are cited to this proposition, and it is believed none such exist.
>
> 191 U.S. 17, 33-34, 24 S.Ct. 8, 13, 48 L.Ed. 73 (1903). The Robert W. Parsons was reaffirmed in Simmons v. The Steamship Jefferson, wherein the Supreme Court stated:
>
>> In reason, we think it cannot be held that a ship or vessel employed in navigation and commerce is any the less a maritime subject within the admiralty jurisdiction when, for the purpose of making necessary repairs to fit her for continuance in navigation, she is placed in a dry dock and the water removed from about her, than would be such a vessel if fastened to a wharf in a dry harbor, where, by the natural recession of the water by the ebbing of the tide, she for a time might be upon dry land.
>
> 215 U.S. 130, 142, 30 S.Ct. 54, 58, 54 L.Ed. 125 (1909). Both The Robert W. Parsons and The Steamship Jefferson involved suits in contract. In Gonsalves v. Morse Dry Dock & Repair Co., however, the Supreme Court applied the aforementioned principle articulated in The Robert W. Parsons to suits in tort. 266 U.S. 171, 45 S.Ct. 39, 69 L.Ed. 228 (1924) (recognizing that a vessel in a floating dry dock is on water, not on land, for purposes of admiralty tort jurisdiction). These decisions may be old, but they are old precedent, and we are bound to follow them.

Id. at 348 -349 (footnotes omitted). Therefore, the tort in this case occurred on navigable waters for the purpose of admiralty jurisdiction and the locality test is satisfied.

**b) The nexus, or connection, test.**

> To fall under admiralty jurisdiction, the claim must also satisfy the nexus test.
>
> The nexus test involves two queries: (1) Did the incident have a "potentially disruptive impact on maritime commerce"? Sisson [v. Ruby], 497 U.S. [358] at 363, 110 S.Ct. [2892] at 2896 [(1990)]; and (2) Does a "substantial relationship" exist "between the activity giving rise to the incident and traditional maritime activity"? Id. at 364, 110 S.Ct. at 2897.

Reyes, 23 F.3d at 350. The relevant activity in this case was the provision of emergency medical care to a ballast control operator aboard a vessel that was in drydock undergoing a complete overhaul and refurbishment. Some courts have found the provision of medical treatment to seamen to be sufficiently related to traditional maritime activity to confer maritime jurisdiction. See e.g. Barbetta v. S/S Bermuda

Star, 848 F.2d 1364, 1368-69 (5th Cir. 1988); Parker, 803 F.2d at 829-30; Kelly v. Smith, 485 F.2d 520, 525 (5th Cir.1973); Rand v. Hatch, 762 So.2d 1001, 1003 (Fla.App. 3 Dist. 2000); Antoine v. Zapata Haynie Corp., 777 F.Supp 1360 (E.D. Tex. 1991).  Although the ATWOOD HUNTER was not at sea at the time the tort occurred, the vessel was being readied to set sail for Egypt the next day.  Certainly, the provision of necessary medical care to a ballast control operator aboard the vessel could potentially impact the vessel's voyage.

Plaintiff argues that, based on the four factor test established by the Fifth Circuit in Kelly, the claim does not bear a sufficient connection to traditional maritime activity. See Kelly, 485 F.2d at 525.  To aid in determining whether a wrong bears a sufficient connection to traditional maritime activity, some courts have used the following factors:

> 1) the functions and roles of the parties;
>
> 2) the types of vehicles and instrumentalities involved;
>
> 3) the causation and the type of injury;
>
> 4) and traditional concepts of the role of admiralty law.

Miller, 873 F 2d at 812 (citing Kelly, 485 F.2d at 525).  However, the use of the four factors established in Kelly is not mandatory, but permissive. Bunge Corp., 240 F.3d at 925 n 4.  Plaintiff cites extensively the reasoning of Miller which found that the medical treatment in that case had no connection to traditional maritime activity.   The Miller Court stated the following:

> The appellants have failed to persuade us that the national interest would be served by applying admiralty jurisdiction to a malpractice claim against land based doctors who dispensed medical treatment to an onshore mud man, far removed from the hazards of waterborne navigation. We are in fact convinced that finding admiralty jurisdiction for medical malpractice suits with no more relationship to maritime activities and dangers than is presented here would clearly violate principles of federalism and advance no

federal interest.

Miller, 873 F.2d at 813.   However, the plaintiff in Miller was a "mud man" on a drilling barge who was fell while on the barge, but who was examined and treated by physicians on shore several days later. The medical treatment was the basis for the lawsuit.  Mr. Cook, on the other hand, was a ballast control operator who was treated aboard a vessel that was readying for sail to Egypt.  The court finds that the circumstances of this case are more analogous to the Barbetta, Parker, Kelly, Rand, and Antoine cases previously cited,  which held that medical treatment aboard a vessel constitutes a traditional admiralty activity.  The court concludes that plaintiff's claim against Atlantic Marine bears a sufficient nexus to traditional maritime activity to fall under admiralty jurisdiction.

**c) Which law controls?**

Having found that admiralty jurisdiction exists, the court must now determine whether admiralty law should be applied to the exclusion of state law. See Diesel "Repower", Inc. v. Islander Investments LTD, 271 F.3d 1318, 1323 (11th Cir. 2001) ("Next we must determine if substantive admiralty law would govern this case if converted to a saving to suitors clause case.")   The general rule is that:

> Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir.1984), cert. denied, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). See also Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 408-09, 3 L.Ed.2d 550 (1959); Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1320-21 (11th Cir.1989).

Everett v. Carnival Cruise Lines, 912 F.2d 1355, 1358 (11th Cir. 1990); see also Diesel "Repower", Inc., 271 F.3d at 1322  ("The saving to suitors clause allows an in personam action, whether the action is instituted in a state court or in a federal court under diversity jurisdiction or in a federal court under

maritime jurisdiction. However, the action will be governed by federal principles of admiralty and maritime law that control the respective rights and liabilities of the parties." citations omitted). However, "as is the case with most general rules, there are exceptions to the usual supremacy of federal maritime law." Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1529 (11th Cir. 1990). "[F]ederal courts sitting in admiralty should, according to the dictates of comity, acknowledge and protect state-created rights, even at times to the exclusion of an existing maritime law." Id. at 1530.

> In order to determine whether to give effect to a state law to the exclusion of a conflicting admiralty law, courts have generally used a balancing approach. In Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488 (11th Cir.1986), the court suggested the following method for resolving such conflicts:
>> One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed.... If there is a[n] admiralty-state law conflict, the comparative interests must be considered --they may be such that admiralty shall prevail ... or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect....
>
> Emphasis added (citations omitted).

Brockington, 903 F.2d at 1523.

The Eleventh Circuit has found that Alabama's Wrongful Death Statute conflicts with admiralty law.[2] Amtrack "Sunset Ltd." Train Crash in Bayou Canot, Ala., 121 F.3d 1421 (11th Cir.1997). The

---

[2] The court is aware that plaintiff contends that because Sunset Limited also foreclosed the recovery of punitive damages that there is no longer a conflict between substantive maritime law and Alabama State wrongful death law. This court disagrees. Sunset Limited held that the wrongful death claimant could not recover punitive damages for simple negligence under Alabama's wrongful death statute. The Court also held that nonseaman personal injury plaintiffs, as distinguished from nonseaman wrongful death plaintiffs, were not entitled to seek nonpecuniary damages, including punitive damages, under the general maritime law. Id. at 1429. However, the Court held that the wrongful death claimants could "recover punitive damages upon a showing of intentional or wanton and reckless conduct on the

Sunset Limited court balanced the countervailing interests and determined that the federal maritime interests outweighed Alabama's interests in having its wrongful death statute apply to the case.  Id. at 1427.

> It goes without saying that the State of Alabama has a sovereign interest in activities that occur within its territorial waters.  See Brockington, 903 F.2d at 1530 (state interests include the interest in being permitted to regulate independently matters of local concern without interference by the federal government).  Moreover, Alabama undoubtedly is interested in protecting its citizens and providing for those who have been injured by tortious acts committed within its borders.  See Yamaha, 40 F.3d at 644 (state interests include policing territorial waterways and protecting citizens through tort systems).  However, as significant as Alabama's interests may be, the federal maritime concerns that exist in this case tip the balance in favor of displacing state law insofar as the claims for wrongful death under the Alabama Wrongful Death Act are based upon simple negligence.

Id. at 1426.  The Court explained that because of the conflict between the two laws, namely "(1) the apportionment of damages for joint tortfeasors, and (2) the applicable standard of liability for the recovery of punitive damages," substantive admiralty principles would be placed at risk by the application of state law and therefore, "there is no leeway for variation or supplementation by state law."  Id. (citations and internal quotations omitted).   Although plaintiff points to differences between the facts of this case and that of Sunset Limited, plaintiff has not persuaded the court that the application of Alabama's wrongful death statute to this case would not undermine the uniform application of the general maritime law.  This court found above that the actions giving rise to plaintiff's wrongful death claim in this case have a  substantial relationship to traditional maritime activity.  Given this substantial maritime relationship and the conflict between Alabama and maritime law noted above, the court finds

---

part of defendants amounting to a conscious disregard of the rights of others." Sunset Ltd., 121 F.3d at 1428 (citations and internal quotations omitted).   Thus, the standard for recovery of punitive damages remains in conflict between State and maritime law.

that Alabama law is not applicable to this case.

## **CONCLUSION**

For the reasons stated above, the court finds that maritime or admiralty law, not Alabama state law, applies to plaintiff's negligence claim against Atlantic Marine.

**DONE and ORDERED** this 3rd day of June, 2005.

                                        /s/   Callie V. S. Granade
                                    CHIEF UNITED STATES DISTRICT JUDGE